IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TULKOFF FOOD PRODUCTS, INC.,

    *Plaintiff*,

v.

    Case No. ELH-17-350

WM. E. MARTIN AND SONS CO., INC.,

    *Defendant*.

## MEMORANDUM OPINION

Plaintiff Tulkoff Food Products, Inc. ("Tulkoff Food") brought suit against defendant Wm. E. Martin and Sons Co., Inc. ("Martin and Sons" or "Martin Spices") (ECF 1), alleging breach of a "Sales Booking" agreement. *Id.* ¶¶ 23-28; *see* ECF 1-1 ("Agreement" or "Sales Booking"). Under the Agreement, Martin and Sons sold thirty-six full container loads ("FCL") of minced Chinese garlic to Tulkoff Food, to be delivered on a particular schedule. *See* ECF 1-1. Tulkoff Food claims that Martin and Sons failed to deliver nine of the 36 FCLs, as required by the Agreement. ECF 1, ¶ 27. As a result, Tulkoff Food alleges that it has incurred more than $564,000 in "direct, consequential, and incidental damages." *Id.* ¶ 28.

Martin and Sons has moved to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). ECF 7. The motion is supported by a memorandum of law (ECF 7-1) (collectively, "Motion") and an exhibit. ECF 7-2. Tulkoff Food opposes the Motion (ECF 12, "Opposition") and has submitted an exhibit. ECF 12-1. Martin and Sons has replied. ECF 13 ("Reply").

The Motion has been fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105.6. For these reasons that follow, I shall deny the Motion.

# I. Factual Background

Tulkoff Food is a Maryland corporation with its principal place of business in Baltimore. ECF 1, ¶ 1. According to Tulkoff Food, it is a "leading manufacturer of food service goods, supplying a variety of full-flavored, high-quality condiments, specialty sauces and ingredients for co-pack, private label, food service, industrial and retail customers nationwide." *Id.* ¶ 6. Philip Tulkoff is the president of Tulkoff Food. ECF 12-1 (Tulkoff Affidavit), ¶ 1.

William Martin is vice president of Martin and Sons. ECF 7-2 (Martin Declaration), ¶ 1. Martin and Sons is a New York corporation with its principal place of business in Roslyn, New York. *Id.* ¶ 5. Mr. Martin describes defendant as an "importer of spices, seeds and herbs, which it sells for its own account from a warehouse in New Jersey." *Id.* ¶ 6. Martin and Sons also "facilitates transactions between overseas shippers of spices, seeds and herbs which are delivered directly to the purchaser of the product." *Id.* ¶ 7.

Tulkoff Food and Martin and Sons entered into the Agreement on or about August 20, 2015. *See* ECF 1-1. As noted, under the Agreement, Martin and Sons sold to Tulkoff Food 36 FCLs of minced Chinese garlic, each containing approximately 39,500 pounds of garlic. *Id.* The garlic was to be delivered over a 13-month schedule, as set forth in the Agreement. *Id.* Tulkoff Food agreed to pay $1.58 per pound of garlic. *Id.* Notably, the Agreement provides, *id.*: "Proper execution of this contract is the responsibility of the shipper."

In its Complaint, Tulkoff Food claims that Martin and Sons handled all aspects of shipping the garlic and entered into contracts for the transportation of the shipments. ECF 1, ¶¶ 14, 15. But, in his Declaration, Mr. Martin counters that Martin and Sons did not handle any of the aspects of shipping the garlic. ECF 7-2, ¶ 19. He also avers that Martin & Sons did not enter into contracts for the transportation of the shipments. *Id.* ¶ 20. According to Mr. Martin, the

shipper for this contract was Shandong Sanxing Food Co., Ltd. ("Sanxing"), a producer and shipper in China. *Id.* ¶ 17. Mr. Martin asserts: "The identity of the Chinese shipper was known to and approved by Tulkoff [Food] at the time of the transaction." *Id.*

Mr. Martin explains that the product due under the Agreement was shipped directly by Sanxing to Tulkoff Food. *Id.* ¶ 18. To this end, Mr. Martin states that Martin and Sons "did not handle . . . (1) pickup of garlic from facilities in China; (2) shipping of garlic to Chinese port(s), including in Qingdao; (3) shipping of garlic from ports such as Qingdao to a port in Baltimore, Maryland; or (4) shipping of garlic from Baltimore's port to Tulkoff [Food's] facilities in Maryland." *Id.* ¶ 19. Rather, Mr. Martin maintains that defendant entered into a contract with TRA Spice Inc. ("TRA Spice") to "facilitat[e] the shipments between Sanxing and Tulkoff [Food] . . . ." *Id.* ¶ 21. According to Mr. Martin, all of the "activities" concerning the shipment of the garlic were handled either by Sanxing or TRA Spice. *Id.* ¶ 22.

In his Affidavit, Mr. Tulkoff disputes Mr. Martin's characterization of the shipping arrangements. ECF 12-1. According to Mr. Tulkoff, no representative of Tulkoff Food "met or communicated with [Sanxing] in relation to the Sales Booking." *Id.* ¶ 6. Moreover, Mr. Tulkoff states that during the course of performance of the Agreement, Martin and Sons "handled all aspects of shipping the minced garlic." *Id.* ¶ 7. Specifically, Mr. Tulkoff avers, *id.*:

> Martin Spices handled at least the following shipping activities: (1) pickup of garlic from facilities in China; (2) shipping of garlic to Chinese port(s), including in Qingdao; (3) shipping of garlic from ports such as Qingdao to a port in Baltimore, Maryland; (4) shipping of garlic from Baltimore's port to Tulkoff [Food's] facilities in Maryland; and (5) paying all duties or tariffs due to the United States government upon entry of any shipment.

In support of its position, Tulkoff Food submitted exhibits with Mr. Tulkoff's Affidavit, consisting of emails that appear to be from Martin and Sons. *See id.* at 7-97. The emails, sent from the address "import@martinspices.com", provide information such as the date of the

shipments of the containers and estimated dates of arrival. *See, e.g.*, *id.* at 7-8. Several of the emails also provide updates regarding the shipments, including changes in the estimated dates of arrival (*e.g., id.* at 23-24, 32-33, 43-44, 53-54) and information regarding customs and FDA inspections. *Id.* at 16-17.

According to Tulkoff Food, in or around September 2016, Martin and Sons "fell significantly behind" on the shipping schedule in the Agreement. ECF 1, ¶ 16. Tulkoff Food claims that on January 18, 2017, Martin and Sons repudiated its duties under the Agreement, "claiming that [Martin and Sons] was never responsible for delivering minced Chinese garlic to Tulkoff [Food] in the first place." *Id.* ¶ 19. Tulkoff Food alleges that it has been forced to pay $564,060 to obtain cover and that it will continue to incur additional damages that are "consequential to or incidental to Martin Spices' breaches." *Id.* ¶¶ 21, 22.

In the Motion, Martin and Sons claims that this Court lacks personal jurisdiction over it. ECF 7-1 at 1. In his Declaration, Mr. Martin provides details concerning the contacts between Martin and Sons and the State of Maryland.

In particular, Mr. Martin avers that "Martin and Sons does not own or lease any real property in Maryland." ECF 7-2, ¶ 8. He also claims that "Martin and Sons does not have, and has never had, any office, phone listings, mailing address, bank account, authorized agents, subsidiaries, or employees in Maryland." *Id.* ¶ 9. Further, Mr. Martin avers that during the past three years, Martin and Sons has had "slightly under four hundred total customers", of which approximately seven, including Tulkoff Food, were located in Maryland. *Id.* ¶ 10. And, Mr. Martin asserts that "no officer or employee of Martin and Sons is regularly present in Maryland on business, and the last time any officer or employee of Martin and Sons went to Maryland for any business was approximately more than seven years ago." *Id.* ¶ 11.

In addition, Mr. Martin maintains that "Martin and Sons did not initiate the contacts that led to the transaction at issue in this lawsuit." *Id.* ¶ 14. According to Mr. Martin, "neither [Mr. Martin] nor any officer or employee of Martin and Sons traveled to Maryland in connection with the transaction at issue in this lawsuit." *Id.* ¶ 15.

As noted, Tulkoff Food has submitted Mr. Tulkoff's Affidavit in support of its position that this Court has personal jurisdiction over Martin and Sons. According to Mr. Tulkoff, the relationship between Martin and Sons and Tulkoff Food dates to 1993. Mr. Tulkoff avers that "[s]ince 1993, Martin Spices and Tulkoff [Food] have entered into at least 27 sales booking contracts, under which Martin Spices sold and delivered several hundred container loads of spices" to Tulkoff Food in Maryland, consisting of "significantly more than ten million pounds of spices . . . ." *Id.* ¶ 11. The aggregate value of spices sold by Martin and Sons to Tulkoff Food during the length of their relationship is more than $11.5 million. *Id.* ¶ 13. Mr. Tulkoff also asserts: "Throughout the course of dealings between Tulkoff [Food] and Martin Spices, Martin Spices represented to Tulkoff [Food] that it controlled the manner, method, and timing of delivering spices to Tulkoff [Food] in Maryland." *Id.* ¶ 15.

According to Mr. Tulkoff, the parties "have exchanged hundreds or perhaps thousands of communications both into and out of Maryland, including phone calls, emails, letters, invoices, sales booking, and purchase orders." *Id.* ¶ 17. He also avers: "At some point in or around October 2002, representatives from Martin Spices traveled in person to Tulkoff [Food's] Maryland facilities to contact Tulkoff [Food], discuss the business relationship between Tulkoff [Food] and Martin Spices, solicit further business with Tulkoff [Food], and initiate further business with Tulkoff [Food]." *Id.* ¶ 14.

Additional facts are included in the Discussion.

## II.      Standard of Review

Martin and Sons's motion to dismiss for lack of personal jurisdiction is predicated on Fed. R. Civ. P. 12(b)(2). "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Under Rule 12(b)(2), the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014).

"If the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676.      A court may also, in its discretion, permit discovery as to the jurisdictional issue. *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993).    However, neither discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2). *See generally* 5B C. Wright & A. Miller, *Federal Practice & Procedure* § 1351 at 274–313 (3d ed.) ("Wright & Miller").

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268.   If the district court addresses the question of personal jurisdiction as a preliminary matter, it may rule solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see Grayson*, 816 F.3d at 268.   In that circumstance, the "plaintiff need only make 'a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge.'" *Grayson*, 816 F.3d at 268 (quoting *Combs*, 886 F.2d at 676).   "When determining whether a plaintiff has

made the requisite *prima facie* showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Grayson*, 816 F.3d at 268; *see Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). But, "district courts are not required . . . to look solely to the plaintiff's proof in drawing those inferences." *Mylan Laboratories*, 2 F.3d at 62.

Notably, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 5 (4th Cir. 2005) (emphasis in original) (citation omitted).

### III.    Discussion

Fed. R. Civ. P. 4(k)(1)(A) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state in which the district court is located. *Carefirst of Maryland*, 334 F.3d at 396. In Maryland, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.*; *accord Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, GLR-16-2974, 2017 WL 2778825, at *4 (D. Md. June 26, 2017).

### A.  The Maryland Long-arm Statute

Maryland's long-arm statute is codified at Md. Code (2013 Repl. Vol., 2016 Supp.), § 6–103(b) of the Courts & Judicial Proceedings Article ("C.J."). It authorizes "personal jurisdiction over a person, who directly or by an agent," *id.:*

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals. *See Carbone v. Deutsche Bank Nat'l Trust Co.*, RDB-15-1963, 2016 WL 4158354, at *5 (D. Md. Aug. 5, 2016); *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 135-36 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985); *see also Mylan Laboratories*, 2 F.3d at 61. The Maryland Court of Appeals has "consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution" and that the "statutory inquiry merges with [the] constitutional examination." *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 22, 878 A.2d 567, 580 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)); *see also Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996) (stating that "the two inquiries essentially become one"); *accord ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

However, the Maryland Court of Appeals has clarified that the statutory analysis remains a requirement of the personal jurisdiction analysis. In *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 892 A.2d 479 (2006), the Maryland Court of Appeals said, *id.* at 141 n. 6, 892 A.2d at 493 n. 6 (citations omitted):

> We stated recently in *Beyond v. Realtime* . . . that "the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." We did not, of course, mean by this that it is now permissible to simply dispense with analysis under the long-arm statute . . . . Rather . . . we interpret the long-arm statute to the limits permitted by the Due Process Clause when we can do so consistently with the canons of statutory construction.

Since *Mackey*, the Maryland Court of Appeals has repeatedly affirmed that "determining whether a Maryland court may exercise personal jurisdiction over a foreign defendant requires a two-step analysis." *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *see also CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 983 A.2d 492, 501 (2009) (stating that personal jurisdiction analysis "entails dual considerations"). First, the court considers "whether the requirements of Maryland's long-arm statute[] are satisfied." *CSR*, 411 Md. at 472, 983 A.2d at 501 (citing *Bond*, 391 Md. at 721, 895 A.2d at 999; *Mackey*, 391 Md. at 129, 892 A.2d at 486; *Beyond*, 388 Md. at 14, 878 A.2d at 576). Second, it considers "whether the exercise of personal jurisdiction comports with the requirements imposed by the Due Process Clause of the Fourteenth Amendment.[]" *CSR*, 411 Md. at 473, 983 A.2d at 501 (citing *Bond*, 391 Md. at 721, 895 A.2d at 999; *Beyond*, 388 Md. at 15, 878 A.2d at 575).

With regard to Maryland's long-arm statute, Tulkoff Food argues that Martin and Sons is subject to long-arm jurisdiction in Maryland under both C.J. §§ 6-103(b)(1) and (b)(2). ECF 12 at 8, n.1. Curiously, Martin and Sons did not address long-arm jurisdiction in its submissions. *See* ECF 7-1; ECF 13.

As indicated, C.J. § 6–103(b)(1) authorizes "personal jurisdiction over a person, who directly or by an agent . . . [t]ransacts any business or performs any character of work or service in the State." "Although a defendant need not engage in 'commerce or . . . transactions for profit,'[ ] 'Maryland courts have construed the phrase 'transacting business' narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state.'[ ]" *Aphena Pharma Sols.-Maryland LLC v. BioZone Labs., Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012) (citations omitted). And, the Maryland Court of Special Appeals has said that to "transact business" within the meaning of the long-arm statute, a defendant's action must have "culminated in 'purposeful activity' within Maryland." *Swarey v. Stephenson*, 222 Md. App. 65, 99–100, 112 A.3d 534, 557 (2015).

C.J. § 6–103(b)(2) authorizes "personal jurisdiction over a person, who directly or by an agent . . . [c]ontracts to supply goods, food, services, or manufactured products in the State." As Judge Grimm of this Court said in *Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529 (D. Md. 2014), § 6-103(b)(2) "covers only contracts to supply goods and services *in* Maryland, irrespective of where the contract was negotiated." *Id.* at 535 (emphasis in *Rao*); *see also A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 795 F. Supp. 2d 365, 370 (D. Md. 2011) ("[Section 6-103(b)(2)] covers contracts that offer 'to supply goods, food, services, or manufactured products in the State,' . . . regardless of whether the contract itself was negotiated outside of Maryland.")

Viewing the facts and allegations in the light most favorable to Tulkoff Food, both C.J. § 6-103(b)(1) and § 6-103(b)(2) are satisfied. Section 6-103(b)(1) is satisfied because Martin and Sons and Tulkoff Food have been in an ongoing relationship for more than twenty years, during which the parties have engaged in substantial business dealings worth more than $11.5 million. *See* ECF 12-1, ¶¶ 11, 13. Martin and Sons has not submitted evidence contesting the

nature or duration of this relationship. *See* ECF 7-2. This relationship, when viewed in the light most favorable to Tulkoff Food, indicates that Martin and Sons purposefully reached out to Maryland in conducting its business.

And, § 6-103(b)(2) is satisfied because Martin and Sons agreed to deliver 36 FCLs of minced Chinese garlic to Tulkoff Food in Maryland. ECF 1-1. Although Martin and Sons contests some of the circumstances surrounding the performance of the Agreement, there can be no dispute that Martin and Sons entered into the Agreement to facilitate the delivery of garlic to a company in Maryland. *See* ECF 7-2, ¶ 21.

Thus, Tulkoff Food has made a *prima facie* showing that Maryland's long-arm statute is satisfied. I turn to the due process analysis.

## B. Due Process Requirements

The Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Courts have separated this test into individual "prongs," first ascertaining whether the threshold of "minimum contacts" is met, and then considering whether the exercise of jurisdiction on the basis of those contacts is "constitutionally reasonable." *ALS Scan,* 293 F.3d at 712.

Due process jurisprudence recognizes "two types of personal jurisdiction: general and specific." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India,* 551 F.3d 285, 292 n. 15 (4th Cir. 2009). The Fourth Circuit has explained:

> General personal jurisdiction, on the one hand, requires "continuous and systematic" contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred. Specific personal jurisdiction, on the other hand, requires only that the relevant

conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.

*Id.* (citing, *inter alia, Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-15, (1984)) (internal citations omitted).

Both parties indicate in their submissions that only specific jurisdiction is appropriate here. *See* ECF 7-1 at 5; ECF 12 at 6. I agree that general jurisdiction is inapplicable. There is no basis to conclude, from the facts presented, that defendant's contacts with Maryland are "so constant and pervasive 'as to render [it] essentially at home'" in Maryland. *See Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (alteration in *Daimler*). Accordingly, I shall dispense with consideration of general jurisdiction and shall instead determine whether plaintiff has made a *prima facie* showing of specific jurisdiction.

The Fourth Circuit has formulated a three-part test for courts to use in determining whether there is specific jurisdiction over a defendant. The three prongs are: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers,* 561 F.3d at 278 (citing *ALS Scan,* 293 F.3d at 715); *accord Carefirst of Maryland*, 334 F.3d at 397.

The first element of the *Consulting Engineers* test, 561 F.3d at 278, purposeful availment, "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Id.* The Supreme Court expounded on the minimum contacts requirement in *Burger King*, *supra*, 471 U.S. 462. There, a franchisor sued a franchisee in Florida, alleging, *inter alia,*

breach of franchise obligations. *Id.* at 464-66. The defendants claimed the court lacked personal jurisdiction as to them. *Id.* at 469. In the context of specific jurisdiction, the Court explained that minimum contacts involve "significant activities within a State" or "'continuing obligations' between [the defendant] and residents of the forum." *Id.* at 475-76 (citations omitted). Notably, the "benchmark" is not the "foreseeability of causing *injury* in another State . . . ." *Id.* at 474 (emphasis in *Burger King*). Rather, it is "'foreseeability . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 295 (1980)).

The *Burger King* Court stated unequivocally that entering into a contract with a citizen of the forum state "*alone*" cannot "automatically establish minimum contacts" over a nonresident defendant. *Burger King*, 471 U.S. at 478 (emphasis in original). Conversely, the Court made clear that "even a single act can support jurisdiction," so long as that act "creates a 'substantial connection' with the forum." *Id.* at 475 n.18 (citation omitted). The Court said: "Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there," jurisdiction cannot be "avoided merely because the defendant did not *physically* enter the forum State." *Id.* at 476 (emphasis in original). The *Burger King* Court also observed that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.*

Nevertheless, the Court said, 471 U.S. 474: "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." "Th[e]

'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (internal citations omitted); *see also Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013); *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012). A determination that the defendant has established minimum contacts with the forum state amounts to a conclusion that "'it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.'" *Burger King*, 471 U.S. at 476.

In *Consulting Engineers*, 561 F.3d at 278, the Fourth Circuit enumerated several "nonexclusive factors," applicable in the "business context," which may help to "resolve whether a defendant has engaged in such purposeful availment":

- whether the defendant maintains offices or agents in the forum state;

- whether the defendant owns property in the forum state;

- whether the defendant reached into the forum state to solicit or initiate business;

- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

- whether the parties contractually agreed that the law of the forum state would govern disputes;

- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

- the nature, quality and extent of the parties' communications about the business being transacted; and

- whether the performance of contractual duties was to occur within the forum.

(Internal citations omitted). The Court cautioned, however, that these factors are "not susceptible of mechanical application." *Id.* The Fourth Circuit also said, *id*: "[I]f a court finds

that the defendant has availed himself of the privilege of conducting business in the forum, specific jurisdiction exists."

As noted, Tulkoff Food has the burden of demonstrating a *prima facie* showing of personal jurisdiction over Martin and Sons. *Grayson*, 816 F.3d at 268. Tulkoff Food argues that Martin and Sons has engaged in "significant business activities with Tulkoff [Food] in Maryland since 1993." ECF 12 at 8. Among other things, Tulkoff Food points to the twenty-year business relationship between it and Martin and Sons, worth more than $11.5 million; the ongoing communications between the parties as part of that relationship; and performance of the Agreement by defendant in Maryland. *Id.* at 7-13. In this regard, plaintiff alleges that all but nine of the 36 FCLs of minced Chinese garlic were delivered to it in Maryland. ECF 1, ¶ 17. Given these contacts, and others, Tulkoff Food argues, ECF 12 at 9: "Like the defendant in *Burger King*, there is nothing 'random,' 'fortuitous,' or 'attenuated' about Martin Spices [sic] long-term contacts with Maryland." (Citing *Burger King*, 471 U.S. at 480).

Martin and Sons contends that it "does not have sufficient minimum contacts" and therefore it "would not be fair to require Martin and Sons to defend itself in this action." ECF 7-1 at 9. With respect to the issue of performance of the Agreement, Martin and Sons argues that the Agreement "did not require any performance by *Martin and Sons* in Maryland." ECF 13 at 4 (emphasis added). In support, Martin and Sons points to the language of the Agreement, which provides: "Proper execution of this contract is the responsibility of the shipper." ECF 1-1. In light of this terminology, Martin and Sons notes that it was not the shipper, and that it was the shipper that performed in Maryland. And, Martin and Sons contends that it performed all of its duties under the Agreement in New York. ECF 13 at 3.

In addition, Martin and Sons argues that it has few other contacts with Maryland. It points out that it did not have any in-person contacts in Maryland concerning the Agreement and that all of its negotiations concerning the Agreement were by email. *Id.* at 3. And, Martin and Sons points out that Tulkoff Food does not claim that defendant maintains offices or agents in Maryland, that defendant owns property in Maryland, or that defendant agreed that the Agreement would be governed by Maryland law. *Id.* at 2; *see Consulting Engineers*, 561 F.3d at 278. On these facts, Martin and Sons argues: "Plaintiff cannot establish that with respect to the transaction at issue, Martin and Sons purposefully availed itself of the privilege of conducting activities in Maryland." ECF 13 at 5.

In my view, Tulkoff Food has made a *prima facie* showing of specific jurisdiction as to Martin and Sons.

As an initial matter, performance of the Agreement was to occur in Maryland. *See Consulting Engineers*, 561 F.3d at 278. As discussed, *supra*, under the Agreement, Martin and Sons agreed to sell 36 FCLs of minced Chinese garlic to Tulkoff Food, with delivery in Maryland. *See* ECF 1-1.

In arguing that a shipper, but not Martin and Sons, was to perform in Maryland, Martin and Sons relies on the following language of the Agreement: "Proper execution of this contract is the responsibility of the shipper." ECF 13 at 3; *see* ECF 1-1. Defendant's argument that it had no performance obligations in Maryland belies the plain meaning of the Agreement and common sense.

Martin and Sons cannot dispute that it agreed to sell minced Chinese garlic to Tulkoff Food in Maryland. *See* ECF 1-1. And, Martin and Sons cannot dispute that it had a role in the ultimate delivery of the minced Chinese garlic to Maryland. To be sure, it appears that Martin

and Sons did not contract directly with the shipper. Nor did it employ the drivers of the tractor-trailers that transported the containers from the port or the delivery truck drivers. But, Mr. Martin himself explained in his Declaration that Martin and Sons contracted with TRA Spice "[i]n *facilitating* the shipments between Sanxing and Tulkoff [Food]." ECF 7-2, ¶ 21 (emphasis added). And, Mr. Martin averred that TRA Spices was involved with various aspects of the delivery of the garlic to Maryland. *Id.* ¶ 22; *see id.* ¶¶ 19-20. Moreover, defendant's emails to Tulkoff Food, providing shipping information as to the containers and updates on the shipments, further indicate that Martin and Sons played a role in the deliveries to Maryland of the garlic. *See* ECF 12-1 at 7-97.

Viewing the facts in the light most favorable to Tulkoff Food, Martin and Sons agreed to deliver minced Chinese garlic to plaintiff in Maryland and took steps to provide for that delivery. This establishes a strong contact with Maryland. *See, e.g.*, *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 594 (8th Cir. 2011) ("A delivery term that requires a nonresident defendant to deliver an item to a plaintiff in the plaintiff's forum state supports the existence of personal jurisdiction over the nonresident defendant."); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 167 (2d Cir. 2010) (finding that defendant had minimum contacts with New York where defendant, *inter alia*, engaged in fifty-two transactions in which merchandise was shipped into New York); *Health Commc'ns, Inc. v. Mariner Corp.*, 860 F.2d 460, 464-65 (D.C. Cir. 1988) (explaining that a "seller 'reaching out' to a distant state in order to do business there . . . purposefully avail itself of the forum state law").

In addition, the long-term relationship between Martin and Son and Tulkoff Foods provides additional evidence that Martin and Sons has contacts with Maryland sufficient to exert personal jurisdiction. *Consulting Engineers*, 561 F.3d at 278. Martin and Sons has been

involved in a business relationship with Tulkoff Food that dates to 1993, spanning more than twenty years.  ECF 12-1, ¶ 11.  During this relationship, the parties have agreed to at least 27 sales booking contracts, through which Martin and Sons has sold and delivered to Tulkoff Food an aggregate of more than $11.5 million in spices.  *Id.* ¶¶ 11, 13.  The long duration and substantial nature of Martin and Sons's dealings with Tulkoff Food indicates that Martin and Sons has purposefully availed itself of conducting business in Maryland; the contacts between Martin and Sons and Maryland are neither "random" nor "fortuitous".  *Consulting Engineers*, 561 F.3d at 278.

The parties have also maintained extensive communications regarding their ongoing business dealings.  As noted, according to Tulkoff, Martin and Sons and Tulkoff Food have been "in regular contact" since 1993.  ECF 12-1, ¶ 17.  Tulkoff asserts that this contact has led to the exchange of "hundreds or perhaps thousands of communications both into and out of Maryland . . . ."  *Id.*  Although representatives of Martin and Sons may have seldom – if ever – traveled to Maryland, these communications into and out of Maryland nevertheless tend to show that Martin and Sons purposefully reached out to Maryland in the course of conducting its business.  *Consulting Engineers*, 561 F.3d at 278.

The Eighth Circuit's decision in *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 594 (8th Cir. 2011), is informative.  In that case, K-V Pharm Co., a pharmaceutical manufacturer, brought suit against J. Uriach & CIA, S.A. ("Uriach"), a Spanish corporation, in the United States District Court for the Eastern District of Missouri.  *Id.* at 591.  The plaintiff alleged claims for breach of contract and misappropriation of trade secrets.  *Id.*  Uriach moved to dismiss, *inter alia*, for lack of personal jurisdiction.  *Id.*  The district court granted the defendant's motion and the plaintiff appealed.  *Id.*

The Eighth Circuit determined that there was personal jurisdiction over Uriach in Missouri, finding that there were sufficient contacts between defendant and Missouri. *Id.* at 596-97. Those contacts included that the parties entered into "a long-term product-development contract that would require Uriach to have a continuing relationship with Missouri"; the parties had "engaged in a face-to-face meeting in Missouri to negotiate an amendment to their contract"; and the contract at issue required defendant to ship a product to Missouri. *Id.* at 595-96.

Similarly, the parties have maintained a business relationship dating to 1993, involving a substantial sum of money; they have engaged in ongoing communications regarding their business relationship since 1993; and, most recently, Martin and Sons agreed to sell 36 FCLs of garlic to Tulkoff, with delivery in Maryland.

To be sure, Martin and Sons correctly points out that Tulkoff Food has not argued the existence of several of the factors articulated by the Fourth Circuit in *Consulting Engineers*. And, Martin and Sons is also correct that the weight of some of the arguments advanced by Tulkoff Food is not as persuasive as others in demonstrating sufficient contacts between Martin and Sons and Maryland. But, defendant's conclusion that this counsels against finding that Martin and Sons is subject to personal jurisdiction in Maryland fundamentally misapprehends the personal jurisdiction inquiry.

As the Court expressly stated in *Consulting Engineers*, the factors are "not susceptible to mechanical application." *Id.* at 278. And, as stated by the Supreme Court in *Burger King*, "even a single act can support jurisdiction." *Id.* at 475 n. 18.

Tulkoff Food has made a *prima facie* showing that Martin and Sons is subject to specific jurisdiction in Maryland. *See Grayson*, 816 F.3d at 268. In the light most favorable to plaintiff, the facts presented by Tulkoff Food warrant the conclusion that Martin and Sons has "availed

[itself] of the privilege of conducting business in" Maryland. *Consulting Engineers*, 561 F.3d at 278. In other words, the totality of the contacts between Martin and Sons and Maryland make it such that it was foreseeable to Martin and Sons that it could "reasonably anticipate being haled into court" in Maryland. *Burger* King, 471 U.S. at 474 (quoting *World Wide Volkswagen*, 444 U.S. at 295).

The second prong of the *Consulting Engineers* test provides that the defendant's contacts with the forum state must form the basis of the suit. *Consulting Engineers*, 561 F.3d at 278–79. As the Supreme Court reiterated in *Goodyear*, a corporation's "'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" 564 U.S. at 927 (quoting *International Shoe*, 326 U.S. at 318). And, in *Helicopteros*, *supra*, 466 U.S. at 415-16, the Supreme Court determined that, because the parties had conceded that the cause of action in the case did not arise out of the defendant's activity in the state, the only avenue for personal jurisdiction was general jurisdiction.

Defendant did not address the second prong of the *Consulting Engineers* test in either of its submissions. *See* ECF 7-1; ECF 13. But, as Tulkoff Food contends, it is clear that the dispute in this case concerning the Agreement is directly related to Martin and Sons's contacts with Maryland. ECF 12 at 13-14.

The Agreement specifically requires the delivery of garlic to Tulkoff Food in Maryland. It underlies the dispute before the Court. Thus, the second prong is satisfied.

Finally, the third prong's constitutional reasonableness inquiry permits a defendant "who purposefully has directed his activities at forum residents" to defeat jurisdiction, if he can "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. "This prong of the analysis 'ensures

that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent.'" *Tire Engineering & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 303 (4th Cir. 2012) (quoting *CFA Inst.*, 551 F.3d at 296) (internal quotation marks omitted), *cert. denied*, ___ U.S. ___, 133 S.Ct. 846 (2013).

Defendant did not assert in either of its submissions that it would be difficult or inconvenient for it to litigate in Maryland. *See* ECF 7-1; ECF 13. Accordingly, because defendant must present a compelling case that the maintenance of jurisdiction in this district would be unreasonable to it, and it did not do so, the third prong is satisfied. *See Burger King*, 471 U.S. at 477.

## IV.  Conclusion

In sum, I am satisfied that Tulkoff Food has made the requisite *prima facie* showing of personal jurisdiction over Martin and Sons in Maryland. Accordingly, I shall DENY the Motion (ECF 7), without prejudice. At trial, Tulkoff Food will bear the burden of proof as to this issue.

An Order follows, consistent with this Memorandum Opinion.

Date:  July 7, 2017                                    _____/s/_____
                                                       Ellen L. Hollander
                                                       United States District Judge